UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELLE HUBER

VERSUS

BLUE CROSS & BLUE SHIELD OF
FLORIDA, INC.

CIVIL ACTION

NO: 20-3059

SECTION: "S" (1)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant's **Motion for Summary Judgment** (Rec. Doc. 30) is **DENIED**.

### BACKGROUND

Plaintiff was hired by defendant, Blue Cross & Blue Shield of Florida ("BCBS") in April 2004 as a Customer Service Representative. For almost eight years, plaintiff worked remotely for defendant from her home in Louisiana. Plaintiff suffers from recurrent migraines, and in 2006, she requested and received accommodations for her migraines. From 2014 through 2016, plaintiff required up to eleven weeks of FMLA leave due to her recurrent, unmanageable migraines.

In February 2016, plaintiff was diagnosed with hemiplegic migraines. These migraines cause one-sided weakness and total impairment for the duration of the migraine attack, typically three days. In 2017, after other medications failed to work, plaintiff's physician, Dr. Philip Blair, recommended using non-psychoactive hemp-based CBD oil to help manage her migraines. Plaintiff discussed using the CBD with her migraine specialist, Dr. C. Ann Conn. While using

the CBD oil, plaintiff's work performance improved. She received a score of five out of five for her performance ratings for the years 2017 and 2018, reduced her FMLA leave to eight weeks, and received a promotion in June 2019 from Senior Technology Specialist to IT Business Analyst.

At a June 19, 2019 meeting, Service Desk employees were told that due to federal contract requirements, IT employees working on the government contract with access to the GuideWell Network and Service Management ("GuideWell") system were required to take drug tests, but that no one would lose their jobs because of the results. Previously, on June 1, 2019, plaintiff had been promoted to IT Business Analyst by defendant, a position that did not require GuideWell access.

In July 2019, Dennis Syrmis, IT Manager and plaintiff's supervisor, held a team meeting where he informed plaintiff that she had to take a drug test. The same day, plaintiff spoke with Syrmis separately and reminded him of her disability and the various medications she took due to her disability, including CBD oil. Syrmis told her to "play along," that she would not lose her job based on the results of the drug screen, and informed her that the recommendation from her doctor for the CBD oil would alleviate any concerns with the drug test results. Plaintiff complied with her supervisor's advice and on July 8, 2019 submitted a drug test at defendant's direction.

Thereafter, Charles Brantley, Employee Relations Consultant for BCBS, called plaintiff and informed her that they received her drug test results and that plaintiff's job was at risk. The same day, plaintiff e-mailed Brantley a copy of her doctor's recommendation for the CBD oil and a letter from her doctor regarding the use of CBD oil for her disability. According to plaintiff,

2

Brantley stated that the information plaintiff supplied was very thorough and ensured her that her job was safe.

On July 30, 2019, plaintiff was terminated from her employment with BCBS. She filed a complaint with the EEOC and on August 13, 2020 received a Right to Sue notice. On November 10, 2020, she filed the instant suit, alleging that BCBS violated the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") by intentionally interfering with, coercing, and intimidating her in violation of 42 U.S.C §42 U.S.C. § 12203(b), failing to accommodate her disability and terminating her on account of her disability in violation of 42 U.S.C. §12101 et seq., and terminating her in retaliation for her disability in violation of in 42 U.S.C. § 12203(a). Plaintiff further alleges that BCBS violated the Louisiana Employment Discrimination Law, La. R.S. § § 23:322 and 23:323 ("LEDL") by terminating her on account of her disability, and failing to accommodate her as required by the statute by not allowing her to use hemp-based CBD oil to control her migraines.

Plaintiff's retaliation claim was dismissed by prior order of the court. BCBS has filed the instant motion for summary judgment on the remaining claims, arguing that plaintiff cannot establish that it wrongfully terminated Huber or failed to accommodate her disability pursuant to the ADA or the LEDL, or that it interfered with her rights under the ADA. Plaintiff opposes, arguing that fact issues are present that preclude summary judgment.

Brantley stated that the information plaintiff supplied was very thorough and ensured her that her job was safe.

On July 30, 2019, plaintiff was terminated from her employment with BCBS. She filed a complaint with the EEOC and on August 13, 2020 received a Right to Sue notice. On November 10, 2020, she filed the instant suit, alleging that BCBS violated the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") by intentionally interfering with, coercing, and intimidating her in violation of 42 U.S.C §42 U.S.C. § 12203(b), failing to accommodate her disability and terminating her on account of her disability in violation of 42 U.S.C. §12101 et seq., and terminating her in retaliation for her disability in violation of in 42 U.S.C. § 12203(a). Plaintiff further alleges that BCBS violated the Louisiana Employment Discrimination Law, La. R.S. § § 23:322 and 23:323 ("LEDL") by terminating her on account of her disability, and failing to accommodate her as required by the statute by not allowing her to use hemp-based CBD oil to control her migraines.

Plaintiff's retaliation claim was dismissed by prior order of the court. BCBS has filed the instant motion for summary judgment on the remaining claims, arguing that plaintiff cannot establish that it wrongfully terminated Huber or failed to accommodate her disability pursuant to the ADA or the LEDL, or that it interfered with her rights under the ADA. Plaintiff opposes, arguing that fact issues are present that preclude summary judgment.

## DISCUSSION

I.  **Motion for Summary Judgment**

**A. Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In analyzing the appropriateness of summary judgment in an ADA discrimination claim, courts utilize the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hammond v. Jacobs Field Servs., 499 F. App'x 377, 380–81 (5th Cir. 2012). Under that framework, a plaintiff must first establish a prima facie case of discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 802). If the plaintiff establishes a prima facie case, the burden shifts to the employer, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer satisfies that burden, the burden of production reverts back to the plaintiff, who must show that the defendant's proffered reason was a pretext for illegal discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 804. "A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146–48 (2000) (ADEA case); E.E.O.C. v. Chevron, 570 F.3d at 615 (citing Reeves for the proposition that McDonnell Douglas applies in ADA discrimination cases)).

**B. ADA and LEDL Wrongful Termination Claims**

The ADA prohibits an employer from discriminating against a "qualified individual with

4

a disability on the basis of that disability." 42 U.S.C. § 12112(a). To state a prima facie case of termination due to disability discrimination, a plaintiff must allege that (1) she has a disability; (2) she was qualified for the job; and (3) that she was terminated on account of her disability. E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014). The same legal analysis applies to plaintiff's wrongful termination claims under both the ADA and the LEDL. Credeur v. Louisiana Through Off. of Att'y Gen., 860 F.3d 785, 791, n. 3 (5th Cir. 2017).

In this case, it is undisputed that plaintiff's migraines qualified as a disability. However, BCBS contends that Huber cannot establish that she was a qualified individual under the ADA or LEDL, and she could not perform the essential functions of her position, because passing the drug test was a requirement for the job, and she failed the drug test. Defendant further argues that plaintiff cannot demonstrate that its stated reasons for her discharge were a pretext for unlawful discrimination, because plaintiff was not terminated due to her disability, but for failing the drug test.

### 1. Fact issue regarding whether plaintiff was qualified for the job

According to defendant, plaintiff was working pursuant to a government contract which required access to the GuideWell system, and also required that those having access to the GuideWell system pass a drug test. Thus, defendant argues that a necessary qualification for plaintiff's position was passing a drug test, and she failed to do so.

Plaintiff counters that she was not working under the GuideWell contract, and thus passing a drug test was not an essential qualification for her actual position. According to plaintiff, she had been promoted to the position of IT Business Analyst, which did not require

5

Guidewell access. While she acknowledges that she accessed the GuideWell system after her transition to IT Business Analyst, she maintains that she did so briefly, at the direction of her employer, who told her she needed to update a password. She contends that she did not use the system nor need to use the system to perform her job. She also argues that her supervisors (who were aware of her CBD oil use) told her that the test results would not affect her job standing, suggesting that they, too, were under the impression that passing the test was not an essential job requirement. Plaintiff emphasizes that her work performance actually improved after taking the CBD oil, further indicating that she was qualified. She notes that after switching to CBD to treat her migraines, she received a promotion, a special bonus, improved performance ratings, completed two additional work certificates, and worked as a team leader. Accordingly, plaintiff contends that these facts demonstrate that she was objectively qualified for her job, which did not require a drug screen.

>An individual is qualified for her position if,
>
>with or without reasonable accommodation, [she] can perform the essential functions of the employment position [she] holds or desires. . . . [C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8); see also, Shirley v. Precision Castparts Corp., 726 F.3d 675, 678 (5th Cir. 2013).

Thus, the issue is whether passing a drug screen was an essential function of plaintiff's job. In this case, no job description for plaintiff's position has been submitted indicating that a

negative drug screen was an essential qualification. Nor (despite plaintiff's discovery requests) has defendant provided a copy of the government or GuideWell contract including such a requirement. The parties have submitted a document titled "GuideWell Human Resources Policy and Procedures: Substance Abuse." This document provides: "[t]he use . . . or being under the influence of illegal drugs, non-prescribed controlled substances when reporting to work, [or] while teleworking is strictly prohibited. Rec. Doc. 34-11, 1-2. Employees found in violation are "subject to corrective action, up to and including termination of employment." Id. at 2. "In order to detect the use of these substances . . . employees may be directed to submit to a urinalysis . . . or some other appropriate test or medical evaluation to the extent permitted by law." Id. "The use of medications that are legal and prescribed by a licensed physician for specific treatment purposes will not result in corrective action." Id.

The plain language of this document is that affected employees working under it must not use or be under the influence of illegal drugs or non-prescribed controlled substances when working, and that testing may be employed to detect the use of these substances. This document does not establish that passing a drug test is a litmus test for being "qualified."

On the record before it, the court finds that defendant has failed to demonstrate that plaintiff was not qualified. First, a fact issue exists as to whether the GuideWell requirements even applied to plaintiff, because it appears that GuideWell access was not necessary to perform her job. Second, assuming the GuideWell requirements did apply, the record does not conclusively establish that plaintiff was under the influence of illegal, non-prescribed controlled substances while teleworking. To the contrary, the record contains conflicting evidence. While

plaintiff's test returned a positive result, that is just one piece of evidence in making the determination that she was under the influence of an illegal, non-prescribed controlled substance while working. Plaintiff has provided contrary evidence in the form of an affidavit in which she avers that she has never used marijuana, as well as a letter from her physician explaining that the CBD oil product she was taking could result in a false positive. On the other hand, defendant has provided the declaration of the medical officer for the testing company, Dr. Todd Simo, that says its test was conclusive for marijuana. While Dr. Simo has stated that the drug levels detected were too high to be a false positive,[1] that alone does not resolve the fact question. Plaintiff has provided testimony from Charles Brantley, Senior Employee Relations Consultant for BCBS Florida, suggesting that Dr. Simo did not take into account certain factors that could affect the test results. While Dr. Simo was aware of plaintiff's fourteen other prescription medications, it appears he did not consider whether those medications in combination with plaintiff's chronic health conditions, her body weight, and her extended use of CBD oil over several years, caused her to metabolize CBD oil at a much slower rate than normal, resulting in the positive result.

The foregoing reflects that resolution of the question whether plaintiff was "qualified"

---

[1] Dr. Simo attested that plaintiff's test result reflected the presence of a THC metabolite at a concentration of 90 ng/mL, and the threshold cutoff level was 15 ng/mL. The court takes judicial notice of Louisiana Revised Statute § 49:1005, which provides that in cases in which a drug test can have negative employment consequences, "[t]he initial cut off level for marijuana shall be no less than fifty nanograms/mL and no more than one hundred nanograms/mL as specified by the employer or the testing entity." This suggests two things: first, that Dr. Simo's laboratory's cutoff of 15 ng/mL is below the Louisiana standard; and second, that plaintiff's result of 90 ng/mL, while on the high end, is in the range of results that may be considered a false positive and thus excusable under Louisiana law.

will require both a credibility determination and the resolution of fact issues. These are the province of the jury, precluding summary judgment on this issue.

### 2. Fact issue regarding whether reason for discharge was pretextual

Defendant argues that even if it is not entitled to summary judgment on plaintiff's prima facie discrimination case, plaintiff cannot establish that its proffered reason provided for her termination was pretextual.

Defendant has proffered a legitimate reason for terminating plaintiff: it believed she failed a drug test. While it may be debatable whether the test was accurate, it is undisputed that a positive result was returned, and that it is the reason proffered by defendant for plaintiff's termination. Thus, the burden of production shifts back to plaintiff. To survive summary judgment, she must point to sufficient evidence of a genuine issue of material fact that either "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." LHC Grp., Inc., 773 F.3d at 702 (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted). At summary judgment, " '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.' " Id. (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). "

In support of its argument that its reason for firing plaintiff was not a pretext for a

disability-based termination, defendant points out that it had accommodated plaintiff's disability for over a decade, and that over the years she had sought and received multiple accommodations for her migraines, meningitis, and asthma. She was granted FMLA leave and was able to take time off as needed. Defendant also emphasizes that following the same round of testing that resulted in plaintiff's termination, two other non-disabled employees were terminated for positive drug screens, one of whom also claimed that his was a false positive caused by CBD oil. In other words, defendant contends that even if the test were incorrect, it reasonably relied on the results when it terminated plainitff, and there is no basis to find pretext.

In contrast, plaintiff argues that the healthcare costs for her disability, underwritten by the defendant, cost defendant over $700,000.00, and that defendant's true motive was discriminatory of her disability in an effort to avoid future costs.[2] She also emphasizes that because she had transitioned to a position that did not require her to undergo drug testing, defendant's insistence that she do so anyway is also evidence of pretext.

Plaintiff has pointed to evidence that even if defendant's proffered reason is true, an additional motivating factor could have been plaintiff's disability, which has required the defendant to absorb extensive medical costs. This theory, together with the issue whether the drug test was actually required for plaintiff's position, indicate outstanding issues of fact. The court finds that a summary judgment finding that defendant's proffered reason for the termination was not pretextual is inappropriate.

---

[2] In support of this argument, plaintiff supplemented her opposition with a listing of her medical and pharmacy bills and Blue Cross's payment history.

### C. ADA & LEDL Failure to Accommodate Claims

Unlawful discrimination includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim brought under either the LEDL or the ADA, a plaintiff must prove that (1) she is a qualified individual with a disability; (2) the disability with its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for the known limitations. Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013).

It is not disputed that plaintiff is disabled and that defendant was aware of her disability since 2006. Plaintiff contends that BCBS failed to accommodate her by not allowing her to use medically prescribed, non-psychoactive CBD oil to manage her migraines. Defendant counters that it never restricted plaintiff from taking CBD, but that the accommodation plaintiff actually sought was that it overlook her positive drug test. Defendant further argues that excusing the positive drug test is not a reasonable accommodation, but an extension of preferential treatment to plaintiff.

The court finds that the accommodation sought by plaintiff, that she be allowed to use CBD oil to control her migraines, necessarily implies that a false positive caused by the CBD oil

would not be held against her.[3] Thus, for the accommodation to be reasonable, defendant must provide some way to account for and excuse a false positive. The court finds that fact issues exist as to whether this occurred. While defendant argues that it provided an opportunity for plaintiff to explain her positive result, and she submitted additional documentation in response, the record is not clear that defendant actually considered her explanation. Dr. Simo apparently did not consider plaintiff's individual characteristics, beyond her medication list, in determining that her test result was consistent with marijuana use, and not with CBD use. No basis is provided for Dr. Simo's reliance on a maximum 15 ng/mL cutoff, which is considerably below the Louisiana statutory cutoff, or his conclusion that plaintiff's 90 ng/mL result, which is within the Louisiana statutory range, is a definitive positive result.[4] Without a good faith consideration of plaintiff's explanation for the positive test result, and full consideration of all relevant facts, defendant's "allowance" of plaintiff's use of a legal medication that may cause a false positive drug result is not a reasonable accommodation. The record before the court does not establish that such a good faith consideration of all relevant facts occurred, and thus defendant is not entitled to summary judgment on the failure to accommodate claims.

---

[3] Indeed, plaintiff's supervisors reassured her on precisely that point.

[4] The parties do not argue, and the court does not conclude, that La. R. S. 46:1005 governs this case. It merely takes judicial notice of the fact that under Louisiana law, 50 ng/ML-100 ng/ML is considered an excusable range.

### D. ADA Interference Claim

The ADA also makes it unlawful

> to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA].

42 U.S.C. § 12203(b). The Fifth Circuit has not articulated a specific test to state an ADA interference claim. However, the test for anti-interference claims under the Fair Housing Act, 42 U.S.C. § 3617 ("FHA"), which includes an interference provision identical to that in the ADA, is analogous. See, Frakes v. Peoria Sch. Dist., 872 F.3d 545, 550 (7th Cir. 2017); Brown v. City of Tucson, 336 F.3d 1181, 1191–1193 (9th Cir. 2003). Under those cases, a plaintiff alleging an ADA interference claim must demonstrate that she: (1) engaged in activity statutorily protected by the ADA; or (2) engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; and (3) that the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) that the defendants were motivated by an intent to discriminate. Frakes, 872 F.3d at 550–51.

Common examples of protected activities are formal complaints of discrimination or reporting a public school's failure to provide a free, appropriate public education to students with disabilities." Frakes, 872 F.3d at 551. A request for an accommodation is protected activity. Id. (citations omitted). "[I]nterference" is "understood by its ordinary meaning." United States v. Piekarsky, 687 F.3d 134, 145 (3d Cir. 2012). Cases construing it under the FHA interference provision have adopted the dictionary definition, i.e., "the act of meddling in or hampering an

activity or process." Walker v. City of Lakewood, 272 F.3d 1114, 1129 (9th Cir. 2001) (citations omitted).

In support of her interference claim, plaintiff merely alleges in her complaint that: "Supervisors and employees intentionally interfered, coerced, and intimidated Plaintiff in violation of the ADA 42 U.S.C. 12112."[5] Cmplt., ¶ 31. At oral argument, the court requested plaintiff's counsel to define the protected activity that was interfered with, and to set forth the details of the interference. Plaintiff responded that the protected activity was taking CBD oil, and the interference occurred when her supervisors informed her that her job was on the line despite the prior assurances that it would not be.

The interference test set forth above encompasses as protected activity an employee's "engage[ment] in . . . the exercise or enjoyment of ADA protected rights." By using CBD oil to control her migraines, plaintiff engaged in the enjoyment of a protected right – i.e., she utilized the reasonable accommodation that her employer had putatively granted her. An implied corollary of that accommodation is that the employer must make allowances for a false positive test caused by the CBD oil. Fact issues are present as to whether that occurred, and if not, defendant could be viewed as having interfered with plaintiff's rights. Accordingly, summary judgment is not appropriate on plaintiff's ADA interference claim.

For all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's **Motion for Summary Judgment** (Rec.

---

[5] The source for interference claims is actually 42 U.S.C. 12003(b).

Doc. 30) is **DENIED**.

New Orleans, Louisiana, this 13th day of May, 2022.

_____
MARY ANN VIAL LEMMON
**UNITED STATES DISTRICT JUDGE**